Argued and submitted June 20, affirmed November 23, 1983

## DeROOS,
*Petitioner,*

*v.*

## EMPLOYMENT DIVISION et al,
*Respondents.*

### (82AB866; CA A25118)

672 P2d 63

Marcia Ohlemiller, Certified Law Student, Portland, argued the cause for petitioner. On the briefs was Amy Veranth, Portland.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Newman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioner seeks review of an order of the Employment Appeals Board denying his claim for unemployment compensation. EAB concluded that, under ORS 657.030, he was not engaged in an employment relationship with his putative employer. We affirm.

Petitioner was an employe of the Broadway Cab Company (Broadway) for the month of March, 1980. On April 1, 1980, he agreed to purchase a half interest in cab number 25. At that point, he ceased to be a company driver. Owner-operators pay fees to the cab company for providing such services as dispatching, maintenance and gas. Fees are not predicated on the amount of fares collected by owner-operators from their customers.

On January 7, 1981, petitioner released his interest in cab number 25. At the time of the release, he discussed with the owner the transfer of his interest to cab number 93, which was also owned by the owner of cab number 25, but no documents were executed to reflect a transfer of petitioner's interest from cab number 25 to cab number 93. After releasing his interest in cab number 25, petitioner drove cab number 93 and continued to pay Broadway the same fees that he had paid as an owner-operator of cab number 25. Those fees are not paid by company drivers, who do not own any interest in a taxi.

■    In pertinent part, ORS 657.030(1) provides:

"As used in this chapter, unless the context requires otherwise * * * 'employment' means service for an employer * * * performed for remuneration or under any contract of hire, written or oral, express or implied."

EAB concluded that petitioner was not eligible for unemployment benefits, because under the facts he did not perform service for or receive remuneration from Broadway. It is unnecessary to determine whether there is both service to and remuneration from a putative employer. ORS 657.030 defines employment as "service for an employer * * * performed for remuneration." If there is no service performed *or* remuneration given, there is no employment relationship. *See Golden Shears Barber Shop v. Morgan,* 258 Or 105, 481 P2d 624 (1971). Broadway has two distinct types of drivers, employes

and owner-operators. An employe is assigned to drive various cabs and is paid by the company. An owner-operator, on the other hand, owns an interest in the cab that he drives and pays a fee to the cab company for services such as dispatching, maintenance, gas and weekly dues for the use of Broadway's personnel and physical plant. Owner-operators collect fares, pay those expenses to Broadway and keep the rest. The cab company does not remunerate owner-operators.

■ Petitioner began work as a cab driver on February 29, 1980. From that point until March 31, 1980, he was clearly an employe of Broadway. EAB found that from April 1, 1980, to the end of his relationship with the cab company he was actually or in effect an owner-operator. Although there were two cabs involved during the time, and the arrangement between petitioner and the owner of the cabs is not entirely clear, EAB's conclusion that petitioner did not receive remuneration from Broadway is an appropriate inference from the undisputed facts.

Affirmed.