Argued and submitted March 6; in A149597 and A149598, reversed and remanded; A148351 and A148359 dismissed as moot September 30, 2015

Julie A. WERTH,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Employment Appeals Board Nos.
11AB0988, 11AB0989, 11AB2522, 11AB2523;
A148351 (Control), A148359, A149597, A149598

359 P3d 1249

Dennis Steinman argued the cause for petitioner. With him on the reply brief were Scott J. Aldworth, and Kell, Alterman & Runstein, L.L.P. On the opening brief was Julie A. Werth *pro se.*

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F.

Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Tookey, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

In *J. A. W. v. Employment Dept.*, 237 Or App 520, 240 P3d 86 (2010), we reversed and remanded an order of the Employment Appeals Board (EAB) in which it determined that petitioner was disqualified from receiving regular unemployment insurance benefits. Petitioner had first started claiming benefits in 2008 and, while litigating *J. A. W.*, continued to file weekly claims for regular unemployment benefits. After we decided *J. A. W.*, petitioner was paid all of her regular benefits, and she received a notice from the Employment Department concerning the potential availability of certain extended unemployment insurance benefits. She then made claims for receipt of extended benefits. The department denied her claims, and petitioner pursued her administrative remedies to challenge the denials.

Ultimately, in two identical final orders, each concerning separate claim periods, EAB concluded on reconsideration that petitioner was not entitled to receive extended unemployment benefits because her claims were untimely. On consolidated review of those orders, petitioner seeks reversal, arguing that EAB incorrectly applied a number of statutes and administrative rules that govern claims for regular unemployment insurance benefits, without considering the statutes governing claims for extended benefits. We agree and, accordingly, reverse and remand in A149597 and A149598.[1]

## I. FACTS

A. *Petitioner's Claim for Regular Unemployment Benefits*

As background, we provide a brief recap of petitioner's claim for regular unemployment insurance benefits.

---

[1] In April 2011, petitioner filed two petitions for judicial review from two orders that the EAB had issued earlier that month in case numbers 11-AB-0988 and 11-AB-0989, and appellate court case numbers A148359 and A148351 were respectively assigned to the petitions. EAB had purported to affirm hearings decisions without an opinion, and, on August 4, 2011, EAB filed in this court a notice of withdrawal of the orders pursuant to ORAP 4.35(1). EAB then issued two identical orders on reconsideration in August 2011. The following month, rather than filing amended petitions for review pursuant to ORAP 4.35(4)(a), petitioner, who was proceeding *pro se*, filed two new petitions for review of the EAB's orders on reconsideration. Those cases were assigned appellate court case numbers A149597 and A149598. All four appellate cases have been consolidated. In light of the withdrawal of the orders challenged in cases A148359 and A148351, we dismiss the petitions in those cases as moot.

Petitioner was a senior engineering drafter for Tillamook County Creamery Association. *J. A. W.*, 237 Or App at 522. In 2008, petitioner was being stalked and threatened by another employee. After unsuccessfully attempting to obtain a stalking protective order and moving residences repeatedly, petitioner moved out of the area and quit her position. *Id.* at 522-24. She applied for regular unemployment insurance benefits, but the department concluded that she was disqualified. *Id.* at 524.

After petitioner requested a hearing and while she was litigating her disqualification, she continued to make weekly claims for regular benefits. The administrative law judge (ALJ) at the hearing and, subsequently, EAB affirmed the department's denial on the ground that petitioner was disqualified by voluntarily quitting her job without good cause. *Id.* at 524-26. Petitioner sought judicial review of EAB's order.

In September 2010, we reversed EAB's order, holding that petitioner was not disqualified from receipt of regular benefits, and remanded. *Id.* at 530. On remand, in a decision dated December 23, 2010, EAB reversed the hearing decision disqualifying petitioner from receiving unemployment insurance benefits, thereby allowing her to receive all of her regular benefits.

B.  *Petitioner's Claims for Emergency Unemployment Compensation Benefits*

The facts concerning petitioner's dealings with the department as a result of its initial denial of her claim for regular benefits—both before and after the remand in *J. A. W.*—are pertinent to our review in this case. We state the facts based on the undisputed procedural history in the record and the facts in the board's order.

After the remand in *J. A. W.*, the department sent petitioner a notice, dated December 23, 2010, that stated, in part, that she had received all of her regular benefits through the week ending June 6, 2009, and that she might be eligible for extensions of unemployment benefits:

"You have claimed and received unemployment benefits for the week ending 06/06/2009. *This payment reduced your*

*REG claim balance to zero (0).* Please contact your [unemployment insurance] center to determine your eligibility for additional benefits.

"The following benefit extension programs are currently available, and pay in the following order:

**"Emergency Unemployment Compensation (EUC)**

"EUC Tier 1 - pays the less of 20 weeks or 80% of your regular maximum benefit amount. If you are filing weekly claims online, you may be presented with an online EUC application. Otherwise you must call to apply and the application must be effective for the week ending December 31, 2011 or before.

"Additional tiers of EUC are available to individuals who exhaust EUC Tier 1 * * *. If you qualify for one of these additional tiers, it will be automatically added to your claim."

(Emphasis added; boldface in original.)

In response, petitioner contacted the department about receiving extended benefits. The department mailed petitioner a "Wage and Potential Benefit Report." The benefit report was dated January 10, 2011. The date "01/07/11" appeared under a "DATE FILED" heading in the report. The benefit report notified petitioner that she was eligible for one of the extensions of unemployment benefits, Emergency Unemployment Compensation (EUC), "paid under the provisions of the Supplemental Appropriations Act of 2008[, Pub L 110-252, § 4001, 122 Stat 2323, 2353 (set out as a note to 26 USC § 3304)]." The benefit report explained that "EUC benefits are payable only during the period of July 6, 2008 through April 30, 2011" and that her weekly benefit amount was $482. The report also contained a notice in capital letters that stated, in part, that the "report becomes final unless you request redetermination of the report or request a hearing within 10 days following the date mailed or delivered."

Despite the department's issuance of the benefit report suggesting that it had determined petitioner's eligibility for EUC benefits, three weeks later, on January 31, 2011, the department issued two notices of administrative decisions denying petitioner extended unemployment benefits.

It did so for two successive periods. In the first of the decisions, number 83844, the department found that petitioner had claimed benefits for one week in June 2009 (June 14 to June 20, 2009). The decision stated that, to be timely, petitioner had to claim benefits for that week by July 14, 2009, and that she had not provided "satisfactory evidence that factors or circumstances beyond [her] reasonable control caused the late filing."

In its second decision, number 83853, the department found that petitioner had claimed benefits for close to a nine-month period, from June 21, 2009 to September 4, 2010. That decision stated that petitioner had claimed "[b]enefits" on January 11, 2011. The department characterized her action as "an additional claim to restart a claim during an existing benefit year and certify to the end of a period of employment." The department concluded that claimant's benefits claim was untimely, finding:

"2.    To be timely, this report had to be filed by July 14, 2009.

"3.    Claimant's reason for reporting late is that she received a message that she could no longer claim benefits.

"4.    Claimant failed to contact Employment Department to resolve the matter."

The department further stated that, with regard to the extended benefits claimed for the period from June 21, 2009 to Sept 4, 2010, petitioner had "requested backdating of the additional claim to the period ending June 27, 2009."

In both decisions, the department cited, without elaboration, two statutes—ORS 657.155 and ORS 657.260—as applicable law. In decision number 83844, the department also cited a rule concerning continued claims, OAR 471-030-0045. In decision number 83853, the department relied on a different rule concerning reopened claims, OAR 471-030-0040. The department cited the rules without explaining why those rules applied to petitioner's claims for extended benefits.

C.   *Petitioner's Challenge to the Denial of EUC Benefits*

Petitioner requested a hearing to challenge the department's denial of EUC benefits. At the hearing, petitioner and the department took contradictory positions

regarding what the department's online claims system told her to do when she tried to continue claiming benefits during her challenge to her disqualification in *J. A. W.*

Petitioner testified that, in June 2009, when her regular benefits would have been exhausted had she not been disqualified, she tried to make a claim but received a message that she could no longer claim benefits. Petitioner explained that she checked the department's website and consulted her attorney. She had not received any information from the department regarding a requirement to file a claim for extended benefits during the period while she was disqualified. Based on legal advice, she thought that she had to wait until her appeal in *J. A. W.* was decided before she could pursue any claim for additional benefits. And so, she explained, in light of her pending appeal in *J. A. W.*, she stopped trying to make claims online, even though she remained unemployed.

In contrast, a department employee testified that the online system would have told petitioner in June 2009, before the reversal and remand in *J. A. W.*, that she "needed to restart her claims." At the same time, however, the employee acknowledged that, because petitioner was disqualified from receiving regular benefits, she was not being paid and her benefits were not exhausted. In that situation, she testified, the department does not send a claimant "notices about extensions if there's still a balance" on the claimant's regular benefits.

The ALJ accepted petitioner's version of the events concerning her claims for benefits in June 2009. The ALJ found that, when petitioner attempted to claim benefits for week 25-09, ending June 27, 2009, she was unable to claim benefits and

> "received a message stating that she cannot claim benefits because her benefits would have expired by that time. The online system did not allow [her] to enter the screen where she could file her weekly claim. [She] did not receive a message online that informed her that she must restart her claim by calling the Employment Department. On the Employment Department's website, claimant learned that she could not apply for extensions until she exhausted her regular benefits."

The ALJ nevertheless concluded that her claim for week 25-09 was not timely because she should have called the department to ask whether she was required to continue claiming benefits. Further, in a separate decision, the ALJ found that, on January 11, 2011, petitioner told the department that she wanted to claim benefits for the weeks of June 21, 2009 through September 4, 2010. However, the ALJ concluded as to that longer claim period that petitioner had "filed an initial, additional or reopened claim" in January 2011 and was "not entitled to backdate the claim to the period June 21, 2009 through September 4, 2010."

Petitioner appealed the ALJ's decisions to EAB. EAB issued two identical final orders, after reconsideration, in which it affirmed the ALJ. EAB's findings concerning when petitioner had made claims for regular and extended unemployment benefits were as follows:

"(1)   After filing her initial claim in November 2008, claimant claimed each week continuously thereafter, through the week ending June 13, 2009. She did not claim benefits for the week ending June 20, 2009 (week 24-09).

"(2)   *On June 30, 2009, claimant attempted unsuccessfully to file a claim for the week ending June 27, 2009 (week 25-09) using the Department's Online Claims System.*

"(3)   *On January 11, 2011, claimant telephoned the Department and asked to claim benefits for weeks beginning 25-09 and continuing.*"

(Emphasis added.) The emphasized findings relate to petitioner's claims for EUC benefits.

In its final orders, EAB determined that petitioner had made late claims for EUC benefits and an ineffective request to backdate the claims. EAB noted that, under ORS 657.155(1)(b), a claimant is eligible to receive unemployment benefits for any particular week only when the department's director finds that he or she "has made a claim for benefits with respect to such week." EAB reasoned that, even assuming the truth of petitioner's version of events in June 2009 and that she had delayed filing because of her disqualification from receipt of regular benefits and confusion attributable to the department, she still waited too

long to attempt to file her EUC claims after she prevailed in *J. A. W.* Applying the same administrative rules used by the department, EAB concluded that "claimant's late claims and request to backdate were properly denied" because she made her claims on January 11, more than seven days after (1) our decision in *J. A. W.*, (2) the appellate judgment in *J. A. W.* issued, and (3) EAB's decision on remand on December 23, 2011.

## II. DISCUSSION

On judicial review, the department defends EAB's order. The department maintains that petitioner's EUC claim in January 2011 was either an untimely "continued claim"[2] under OAR 471-030-0045(4) (2011), which requires that such a claim be filed within seven days of the week for which benefits are claimed, or else a "reopened claim"[3] that was untimely due to the limit on backdating such a claim to the prior week, as stated in OAR 471-030-0040(3) (2011) ("An authorized representative of the Employment Department shall backdate a claim seven days in all cases when a claimant requests backdating of an initial, additional or reopened claim no later than seven (7) calendar days from the end of the week to which backdating is requested.").

In contrast, petitioner contends that the department's legal authority applies to claims for regular benefits and that the department lacks a statutory or regulatory basis for its asserted seven-day limitation period for petitioner to file a claim for EUC benefits under the circumstances of this case. Petitioner notes that neither EAB nor the department has cited or recognized that a portion of the

---

[2] A "continued claim" means

"an application that certifies to the claimant's completion of one or more weeks of unemployment and to the claimant's status during these weeks. The certification may request benefits, waiting week credit, or non-compensable credit for such week or weeks. A continued claim must follow the first effective week of an initial, additional or reopen claim, or the claimant's continued claim for the preceding week[.]"

OAR 471-030-0045(1)(a) (2011). The department does not explain why petitioner's EUC claim was a continued claim. On remand, the department may address that issue.

[3] A "reopened claim" is one that "restarts a claim during an existing benefit year or other eligibility period." OAR 471-030-0040(1)(d) (2011). The department does not explain why petitioner's EUC claim was a "reopened claim" either. On remand, the department also may address that issue.

Employment Department Law is devoted to extended benefits. *See* ORS 657.321 - 657.329. Petitioner urges that, in light of those extended benefit statutes, the administrative rules do not apply to bar her receipt of the EUC benefits she claimed after she was determined to be qualified to receive regular benefits in *J. A. W.* She further argues that she sought EUC benefits as soon as practicable and that it is unfair for the department to deny those benefits based on her allegedly untimely claims, given that the department had already deemed her disqualified from receipt of *any* benefits and that she was otherwise prevented from making a claim for extended benefits. Thus, she concludes, her claim for EUC benefits was timely.

The parties' dispute centers on whether the department had legal authority to deny petitioner's application for EUC benefits as untimely. We review that issue for legal error. *See* ORS 657.684 ("Judicial review of decisions under ORS 657.683 shall be as provided for review of orders in contested cases in ORS chapter 183 ***."); ORS 183.482(8)(a) (if a court concludes that a correct interpretation of the law compels a particular action, the court shall set aside the order or remand the case to the agency). We conclude that the department and EAB erroneously failed to consider the extended benefits statutes in determining whether to apply the claims rules to bar petitioner's claims for EUC benefits as untimely.

As petitioner correctly observes, the Employment Department Law, which governs unemployment insurance, contains a series of statutes pertaining to extended benefits, ORS 657.321 to 657.329. Among those is a definitions statute that explicitly delineates between extended benefits and regular benefits. In ORS 657.321(7), "regular benefits" are defined as "benefits payable to an individual under this chapter or under any other state law *** *other than extended benefits.*" (Emphasis added.) "Extended benefits" are defined as "benefits *** payable to an individual under the provisions of this chapter for weeks of unemployment in the individual's eligibility period." ORS 657.321(4).

Eligibility for extended benefits is described in ORS 657.325(1). Essentially, extended benefits are a separate

type of benefits available only after an individual has exhausted the regular benefits to which she or he is entitled. Under ORS 657.325(1), a claimant must meet three eligibility requirements for extended benefits: the individual (1) must be "an exhaustee"; (2) must have "satisfied the requirements of this chapter for the receipt of regular benefits that are applicable to individuals claiming extended benefits, including not being subject to a disqualification for the receipt of benefits"; and (3) must have been paid a sufficient amount of wages. As relevant to our review, the definition of "exhaustee" in ORS 657.321(2) provides:

"'Exhaustee' means an individual who, with respect to any week of unemployment in the individual's eligibility period:

"(a)   Has received prior to such week, all of the regular benefits that were available to the individual under this chapter or any other state law * * * in the current benefit year that includes such week (provided that an individual shall be deemed to have received all of the regular benefits that were available to the individual, although as a result of a pending appeal with respect to wages or employment that were not considered in the original monetary determination in the current benefit year, the individual may subsequently be determined to be entitled to added regular benefits)."[4]

Petitioner, therefore, was not eligible for EUC benefits under ORS 657.325(1) in June 2009—the time when the department contends she should have claimed such benefits—for two reasons. First, she was not an exhaustee under ORS 657.321(2) because she had not received any of the regular benefits that were available to her. Second, she had not satisfied the requirements for receipt of regular benefits applicable to those claiming extended benefits, because she was still, albeit erroneously, subject to disqualification for receipt of benefits. She did not become eligible for EUC benefits until the end of December 2010, after she had received payment of her regular benefits.

---

[4] Oregon law comports with federal law concerning extended benefits. *See* § 202(a) of the Federal-State Extended Unemployment Compensation Act of 1970 (EUCA), Pub L 91-373, II, §§ 201-07, 84 Stat 708-12 (1970), as amended, set forth as a note to 26 USC § 3304 (stating that extended benefits are only available when an individual has exhausted all regular benefits).

Despite her ineligibility and despite her inability to file claims for EUC benefits on the department's online claims system, the department and EAB faulted petitioner for failing to make claims for EUC benefits beginning in June 2009, which it maintains was clearly required for timely EUC benefits claims. The department on review further contends that, at best, petitioner had seven days from December 23, 2010, the date that EAB reversed her disqualification from benefits, to make a claim. But Oregon's extended benefit statutes in ORS 657.321 to 657.329 are indefinite regarding when a claimant who has successfully appealed a disqualification from receipt of regular benefits must claim extended benefits.

The extended benefit statutes do not provide for a separate time limitation specifically aimed at initiating claims for extended benefits.[5] Rather, the extended benefits statutes provide that, generally, provisions in the Employment Department Law apply to both regular and extended benefits, with one significant exception:

"The provisions of this chapter relating to the payment of regular benefits shall apply to claims for and the payment of extended benefits, *except when the result would be inconsistent with the provisions of ORS 657.321 to 657.329.*"

ORS 657.323 (emphasis added).[6] Thus, if the result of applying the time requirements for filing claims for regular benefits would be inconsistent with the provisions of the

---

[5] Likewise, the federal law governing EUC does not contain any specific, separate time limitation for filing extended benefit claims. *See* EUCA § 202(a)(2); Pub L 110-252, IV. Instead, the federal regulation governing extended benefits states that an individual must be an exhaustee and must file a "timely claim" for extended benefits in order to receive extended benefits, but the regulation does not define "timely claim." 20 CFR § 615.4(a) (2012).

[6] Oregon law is consistent with the counterpart federal regulation, 20 CFR § 615.8(a). That regulation provides, in part:

"Except where the result would be inconsistent with the provisions of the Act or this part, the terms and conditions of the applicable State law which apply to claims for, and the payment of, regular compensation shall apply to claims for, and the payment of, Extended Benefits. The provisions of the applicable State law which shall apply to claims for, and the payment of, Extended Benefits include, but are not limited to:

"(1) Claim filing and reporting;

"* * * * *

"(6) Disqualifications * * *[.]"

Employment Department Law pertaining to extended benefits, ORS 657.321 to 657.329, those requirements fall away. In that regard, we note that the unemployment compensation law "is remedial and should be liberally construed" in favor of awarding benefits. *Unemp. Compensation Com. v. Brown*, 225 Or 306, 311, 358 P2d 502 (1960).

Neither the department nor EAB has determined whether applying the claims filing requirements for a regular benefits claim—either statutes or the department's own rules—to petitioner's claim for EUC benefits would bring about a result inconsistent with the extended benefits statutes, as provided in ORS 657.323. We therefore set aside EAB's orders on reconsideration and remand for the department's authorized representative to make that determination in the first instance in light of our decision. When it does so, the department should consider whether petitioner should be penalized for the period involving the department's erroneous disqualification of her from both regular and EUC benefits and for the period following the remand in *J. A. W.*, when petitioner did not know of any time limitation on the filing of claims for EUC benefits. *Cf. Gurewitz v. Commissioner of Jobs and Training*, 444 NW2d 299, 301 (Minn Ct App 1989) (concluding that rules imposing a 35-day time limit for filing a continued claim were "not applicable" when the agency re-determined the claimant's unemployment benefits, at that point triggering the claimant's right to receive more weeks of unemployment benefits well after the 35-day limit had run; to conclude otherwise would be "unjust" and "would result in an absurd and unreasonable" interpretation of Minnesota law).

In A149597 and A149598, reversed and remanded; A148351 and A148359 dismissed as moot.